1            BEFORE THE NATIONAL ASSOCIATION
                 OF SECURITIES DEALERS
2

3

4   DAVID G. PEREGRIN,                )
                                      )
5        Claimant,                    )
                                      )
6        -vs-                         )   NASD No. 04-06892
                                      )
7   MILESTONE GROUP MANAGEMENT,       )
    LLC, and WILLIAM E. KASSAR,       )
8   JR.,                              )
                                      )
9        Respondents.                 )

10

11          REPORT OF PROCEEDINGS of the Arbitration before

12   a panel consisting of CHAIRMAN ROBERT W. EDLER and

13   ARBITRATOR KENNETH J. GOOD, taken at 203 North LaSalle

14   Street, Chicago, Illinois, Suite 2100, at the hour of

15   approximately 9:00 o'clock a.m on September 18th, 2006.

16

17

18

19

20   **EXHIBIT A TO DECLARATION OF JAMES McGURK DATED MAY 20, 2008**

21

22

23

24

1    APPEARANCES:

2

3         LAW OFFICES OF JAMES A. McGURK, P.C., By
          Mr. James A. McGurk
4         140 South Dearborn Street
          Chicago, Illinois 60603
5         Suite 411
          312-236-8900
6
              Appeared on behalf of the Claimant;
7

8

9         LAW OFFICES OF SHELDON H. GOPSTEIN, P.C., By
          Mr. Sheldon P. Gopstein
          130 West 42nd Street
10        New York, New York 10036
          Suite 410
11        212-363-2400

12            Appeared telephonically on behalf of
              the Respondents.
13

14   ALSO PRESENT:

15

16        MR. MATTHEW LUZI,
          NSDA Director;

17        MS. KATHY PEREGRIN and MR. JAMES P. RYAN.

18

19

20

21

22

23

24

1          MR. LUZI:  Hello?  Hi, Sheldon.  Hold on just a

2    minute.  I need to -- let's see.

3                    (Brief pause.)

4          Sheldon?

5          MR. GOPSTEIN (telephonically):  Yes.

6          MR. LUZI:  Okay.  I'm just going to leave it

7    like this.

8          Okay.  We're in the conference room for the

9    Peregrin hearing.

10         CHAIRMAN EDLER:  You want me to start?

11         MR. LUZI:  Yes, sir.

12         CHAIRMAN EDLER:  Good morning, Mr. Gopstein.

13         MR. GOPSTEIN:  Good morning.  Is that the

14   Chairman?

15         CHAIRMAN EDLER:  This is Mr. Edler, the Chair.

16         MR. GOPSTEIN:  Good morning.

17         CHAIRMAN EDLER:  Good morning.

18         And Mr. Kenneth Good, the other arbitrator, is

19   sitting next to me.  And Mr. Duffy is not here at the

20   moment, and we'll explain that shortly.

21         Also in this room around the table are the

22   following people who I would like to have introduce

23   themselves in order as they sit around here.

24         Would you please introduce yourselves clearly

1   and with a loud voice so that Mr. Gopstein will know who

2   is here?

3           MR. McGURK:  Yes, sir.

4           My name is James A. McGurk, M-c-G-U-R-K.  I am

5   Counsel for the claimant in this case,

6   Mr. David Peregrin, who is also present.

7           MR. PEREGRIN:  I'm David Peregrin, and my wife.

8           MS. PEREGRIN:  I'm Kathy Peregrin.

9           CHAIRMAN EDLER:  Was that "Kathy," K-A-T-H-Y?

10          MS. PEREGRIN:  Correct.

11          CHAIRMAN EDLER:  Thanks, Kathy.

12          MR. RYAN:  And I'm James P. Ryan, and I'm an

13  expert witness.

14          CHAIRMAN EDLER:  Thank you, Mr. Ryan.

15          And then we have a court reporter who is

16  Mr. Thomas Manno, M-A-N-N-O.

17          So that is -- oh, and excuse me,

18  Mr. Matthew Luzi, of course, of the NASD, who is manning

19  the recorder at the moment.  That gives you an idea,

20  Mr. Gopstein, of who is here.

21          Do you also have Mr. Kassar on the line with

22  you?

23          MR. GOPSTEIN:  Yes, I do.  Bill, you can

24  introduce yourself and say hello.

1      MR. KASSAR: Hello. My name is William Kassar.

2      CHAIRMAN EDLER: Thank you. Okay.

3      I believe -- is the first order of business,

4  Mr. Luzi, as far as you know, to suggest that

5  Mr. Gopstein make his motion, or whatever it is that he

6  would like to do at the beginning here?

7      MR. LUZI: I think the motion is on the table

8  before the Panel at this time.

9      CHAIRMAN EDLER: Oh, it's on the table.

10      Do I understand correctly, Mr. Gopstein, you've

11  made a motion for reconsideration?

12      MR. GOPSTEIN: Yes. And if I could, since I

13  believe we're on the record -- and not only are we being

14  taped, is there also a court reporter there?

15      CHAIRMAN EDLER: There is indeed.

16      MR. GOPSTEIN: I think it might be helpful if I

17  could just spend a moment or two summarizing the present

18  motion, and then you will take it from there.

19      CHAIRMAN EDLER: That sounds like a very good

20  idea. Give us your reasons again, and we'll ask

21  Mr. McGurk to respond.

22      MR. GOPSTEIN: All right.

23      There is presently before the Panel a motion

24  that is dated September 15th seeking various relief.

1          The first part of that motion is to vacate the

2    order of September 14.

3          The second part of that motion is to actually

4    ask Arbitrators Edler and Good to recuse themselves, and

5    in the event that they choose not to, that they be

6    disqualified.

7          And the third part of the motion is for an

8    adjournment.  I'll try to -- since you have papers before

9    you, I'm not going to read the motions, but let me just

10   briefly summarize the grounds for each.

11          As far as the motion to vacate is concerned,

12   it's fairly simple.  There was an initial motion for an

13   adjournment made, and then there was a motion to

14   reconsider.  An oral argument was scheduled with respect

15   to, let's say -- let's call it the second motion for an

16   adjournment.

17          At the time, Mr., I believe it was Mr. Good,

18   was unavailable and did not participate.  And the parties

19   were specifically asked by the Chairman whether we would

20   agree to proceed with respect to that motion only with

21   two arbitrators, and both parties agreed.

22          There was no discussion at all of what would

23   happen if there was a tie vote.  I just don't think that

24   we anticipated that, and frankly, we didn't discuss it.

1            If I had been asked, if I would have permitted

2    or would have consented to allowing the non-participating

3    arbitrator to break a tie vote, clearly I would have

4    declined.  The whole purpose of having the oral argument

5    was to have him hear the oral argument, and not simply

6    decide based upon what was submitted in prior motions.

7            To make a long story short, as fate would have

8    it, there was a tie vote.  And at that time, according to

9    the decision that we received, the September 14th

10   decision, apparently the Chair then went to Mr. Good, and

11   Mr. Good broke the tie, and the motion was denied by a

12   two-to-one vote.

13           That was procedurally improper, in my view.  We

14   didn't agree for that procedure to take place.  In fact,

15   we agreed -- what we agreed was the exact opposite.  And

16   if Mr. Good were to participate, he needed to hear the

17   oral arguments.

18           And what should have happened is the motion, a

19   conference, should have been reconvened with all three

20   Panel members, and then we would have had a vote by a

21   majority of the Panel members.

22           But it was clearly, in my view, improper to

23   have a non-participating arbitrator break a tie vote

24   without the consent of the parties.  That's the first

1  part of the motion.

2           So I would ask that that order, the

3  September 14th order, be vacated, and that the motion be

4  reconsidered with all three arbitrators hearing the oral

5  argument.

6           Okay.  The next part of it has to do with the

7  disqualification motions -- the recusal or

8  disqualification motions, actually.  And we'll take

9  Mr. Edler, the Chairman, first.

10          Chairman Edler perfectly and properly

11  disclosed, back in April, that a conflict of interest had

12  arisen.  And I don't think anyone would argue, even

13  today, that Mr. Edler has a conflict of interest.  He

14  described it as such, and the fact that he's working as

15  co-counsel on a class action lawsuit where the claimant's

16  counsel, Mr. McGurk, has consulted on the same side of

17  that case.  In fact, Mr. Edler refers to it as actually

18  assisting litigation, "and therefore me indirectly,"

19  quote unquote.

20          There's no question there's a conflict of

21  interest.  There's no question that there's an appearance

22  of bias.  And we all know that actual bias need not be

23  proven.  All that's necessary for disqualification is the

24  appearance of bias, and you've got that in droves here.

1  It's just a clearcut case.

2          And what Mr. Edler did is say, "I want to give

3  the Panel, the parties, an opportunity to select another

4  arbitrator.  I have a conflict of interest.  To avoid any

5  possible bias, I'm making this disclosure, and here it

6  is."

7          He did that in April.  There's no doubt that if

8  -- I believe that that notice, the disclosure, was made

9  to the NASD, and the NASD turned around and sent it to

10  Bill Kassar's former attorney also in April.

11          There's no question that Mr. Edler -- there's

12  no question that Mr. Edler would have resigned.  He

13  actually offered to resign.  There's no question that he

14  would have, had Mr. Kassar objected at the time.

15          So the only possible thing we could be

16  discussing here is the timing, the timing of it.  And I

17  want to make very clear that the NASD rulings are

18  absolutely silent with respect to the timing of a

19  disqualification motion after an arbitrator is selected.

20          If you look at Rule 10312, or if you look at

21  NASD Rule 10308, it talks about removal by the Director

22  based on information not known to the parties when the

23  arbitrator was selected.

24          So in other words, if at the time -- when you

1    get the initial lists from the NASD, and you're selecting

2    the arbitrators, and you read their disclosure

3    statements, you cannot then, six months later, after the

4    arbitrator is selected, you cannot go back and say, "You

5    know what?  I didn't read it carefully enough, and I

6    didn't notice it, or I changed my mind.  I now am

7    uncomfortable about a disclosure that was made."  In that

8    event, the NASD has said, too bad, you waived it.

9         But there are no rules, absolutely no rules

10    anywhere, that talk about the timing of a motion based

11    upon a disclosure that's made after the arbitrator is

12    selected.

13         And to bolster that point, I would also remind

14    the Panel -- and I would like to remind the Director of

15    Arbitration as well, if he were listening -- that in the

16    letter from the NASD to Mr. Kassar's former counsel,

17    there's no deadline.  All it says is, "The arbitrator

18    states the following facts and wishes to disclose this.

19    Very truly yours."

20         It doesn't say, "If you have an objection, you

21    have to raise it within 10 days, or 20 days, or 30 days."

22    It doesn't say anything along those lines.  And at no

23    point that I'm aware of has my client waived that

24    conflict of interest.

1           I think if he had gone forward with the hearing

2    this morning, and he had stood there and said, "I hereby

3    consent to the composition of the Panel today," that that

4    might be construed as a waiver.

5           We are absolutely not consenting to the

6    composition of the Panel, and we're objecting to the

7    hearing going forward.

8           And so the whole issue of waiver here is the

9    only issue that can be discussed, vis-a-vis Mr. Edler,

10   and clearly there's been no waiver.

11          And we would simply ask that Mr. Edler do what

12   he offered to do originally, and that is to allow someone

13   else on this Panel who does not have a conflict of

14   interest.

15          And again, I'm sure that Mr. Edler understands

16   that this is absolutely not personal.  I mean, he did the

17   right thing.  He made a proper disclosure.  It would have

18   -- let me just say that we appreciate his honesty and his

19   professionalism.

20          With respect to Mr. Good, the second part of

21   our motion to either recuse or disqualify just simply has

22   to do with a statement that, frankly, we were rather

23   shocked to see.  It's in the September 14 order.

24          And what it says is that once it became clear

1   that there was a split vote, that the Chairman then --

2   although we believe improperly from a procedural

3   standpoint -- he went to Mr. Good, and I'll quote.  This

4   is important to quote.  This is right out of the

5   September 14th order.

6           It says, "Mr. Good advised me at about 12:15

7   p.m." -- and by the way, 12:15 p.m. was five minutes

8   before the commencement of the oral argument.  So this is

9   before he could have even heard anything.

10          "Mr. Good advised me at about 12:15 p.m. that

11  he was solidly of the opinion that no further

12  postponement should be granted, and he was positive that

13  he would vote against any postponement."

14          I think that's improper.  It doesn't matter

15  what issue of the case we're talking about.  You can't

16  pre-judge any issue, and we wonder at this point what

17  other issues Mr. Good may have pre-judged.

18          Once you are on a panel and you accept the

19  responsibility to act as a fair and impartial and

20  objective arbitrator, you cannot pre-judge anything.

21          It is improper to say, "I don't want to hear

22  anything that this guy's counsel has to say.  I don't

23  want to hear the oral arguments.  We've been through this

24  before.  I've closed my mind.  I'm positive how I would

1  rule," before he's even heard the oral argument.

2          He didn't know what I was going to say.  He

3  didn't know whether I had new arguments, whether I had

4  different arguments.  He didn't know any of that.  He was

5  positive how he was going to rule.  That's improper.

6  It's flat out improper.

7          And for that reason, we believe that Mr. Good

8  no longer is fair and impartial, does not have an open

9  mind to the evidence, and should be disqualified.

10         On those two -- on those motions to disqualify,

11  I want to make it very clear also that the Panel members

12  have the option to recuse themselves.  Notwithstanding

13  what the Director may or may not do, or may or may not

14  have done, both Mr. Edler and Mr. Good clearly have the

15  option to simply say, "I either agree or don't want to

16  debate this any longer.  In the interest of justice, in

17  the interest of fairness, and whatever interest you

18  believe, I'm just going to resign," and you clearly have

19  that option if you choose to take it, regardless of how

20  the Director rules and regardless of how a court might

21  rule.

22         And the third part of the motion is obviously

23  the motion to adjourn, but it's almost -- that's almost

24  obvious at this point, because we believe now that two of

1    the three arbitrators really need to resign or be

2    disqualified, and so clearly, the hearing has to be

3    adjourned.

4         The final point I would make is that it would

5    -- if you were to go forward and not resign, and if the

6    Director refuses to re-hear the motion to disqualify,

7    clearly we would bring this matter to court, and that

8    would be unfortunate, because it would just cost my

9    client lots of -- lots more money, and it would cost the

10   claimants more money.  And I just don't think that that's

11   really -- it's not the preferable course.

12        We would have to take that course because we

13   would have no choice, but it's not the course that we

14   would prefer to take.  And thank you again for your time

15   and consideration.

16        CHAIRMAN EDLER:  Thank you very much,

17   Mr. Gopstein.  The Panel would now like to hear from

18   Mr. McGurk regarding these matters.

19        MR. McGURK:  Thank you, Mr. Chairman.

20        In response, I would ask -- first of all, I

21   believe, and I will ask Mr. Gopstein to confirm, when you

22   refer to the first motion for adjournment in your

23   discussion, you're referring to your first motion for

24   adjournment filed on September 7th; is that right?

1  MR. GOPSTEIN:  Yes, that's correct.

2  I understand that there were prior motions.  I

3  was referring to the first motion that I made.

4  MR. McGURK:  That's right.  Thank you.  I

5  wanted to make certain that we were referring to the same

6  motion.  I'm going to--

7  MR. GOPSTEIN:  Sorry for the confusion.

8  MR. McGURK:  I'm going to refer to the NASD

9  Rule 10319, Subsection (b).

10  "If an adjournment requested by a party is

11  granted after arbitrators have been appointed, the party

12  requesting an adjournment shall pay a fee equal to the

13  initial deposit of hearing session fees for the first

14  adjournment, and twice the initial deposit of hearing

15  fees, not to exceed $1,500, for a second or subsequent

16  adjournment requested by that party."

17  The point that I would simply make is that in

18  referring to the record in this case, there were requests

19  made by the respondent, William E. Kassar, Junior,

20  through his counsel, to continue the October 13th, 2005,

21  hearing, and no fee was paid pursuant to 10319 (b).

22  There was a request to continue the December,

23  2005, hearing.  There is no record of any fee being paid

24  for that.

1            There was a request made by Mr. Kassar to

2    continue the February, 2005, hearing.  I'm sorry, the

3    February, 2006, hearing.  No fee was paid at that time.

4            There was a request made by Mr. Kassar,

5    William E. Kassar, Junior, individually, on May 15th,

6    2006, the same day that Mr. Robert Birch, his prior

7    counsel, had withdrawn.  He requested an extension of

8    time.  Again, there was no fee requested.

9            On the September 7th request filed by new

10   counsel for Mr. Kassar, Mr. Gopstein, no fee was paid.

11           So on the basis of procedural violations of the

12   rules, it is clear that the respondent,

13   William E. Kassar, Junior, through prior counsel,

14   individually, and through Mr. Gopstein, has failed to

15   comply with those NASD rules.

16           Referring to the specifics of the motion, the

17   motion that was filed by Mr. Gopstein for adjournment was

18   done by written letter.  There was a response by myself.

19   The Panel ruled on that response.  Mr. Gopstein requested

20   and sent additional documentation.

21           He suggests that somehow Mr. Good was incorrect

22   in indicating that he would have denied the request

23   because the Panel had been chosen, as Mr. Gopstein

24   himself acknowledged, without a requirement to do so, had

1  granted an oral argument. And because Mr. Good could not

2  be present for that oral argument, on the written papers,

3  the written arguments, Mr. Good had expressed an

4  inclination to deny that request.

5        I would simply point out that Mr. Gopstein

6  certainly doesn't indicate that his oral arguments raised

7  something different or something new.

8        I would simply refer, in this instance also, to

9  the arbitrator's manual. And on page -- I believe it's

10  Page 9 of the pamphlet -- actually of the arbitrator's

11  manual -- it states, in referring to applications to

12  postpone a hearing, "While the uniform code does not

13  limit the number of times the arbitrators may postpone a

14  hearing, they should be mindful that one of the goals of

15  arbitration is to provide a speedy method of resolving

16  disputes.

17        "Parties have sought to vacate arbitration

18  awards by alleging that arbitrators exceeded their

19  authority by refusing to grant a postponement. In a

20  majority of those cases, the courts have upheld the

21  arbitrators award."

22        The point that I would make here is that

23  Mr. David Peregrin, who sits to my right, sent to the

24  NASD his statement of claim on September 22nd, 2004. In

1    other words, approximately four days from now, we will be

2    on the second anniversary, the two-year anniversary of

3    his submission.

4    　　　　Therefore, in the face of the prior failure of

5    Mr. Kassar to, among other things, pay the fee that was

6    required when he filed these requests, or to respond to

7    this Panel's order of May 16th, 2006, a copy of which has

8    been faxed to Mr. Gopstein -- and of course this was at a

9    time when Mr. Kassar was not represented.  But I'm going

10    to read from the letter signed by Mr. Edler dated

11    May 16th, 2006.

12    　　　　And it reads, in part, "The Panel has

13    unanimously decided to postpone the hearing set for the

14    next three days, May 17th, 18th, and 19th, in light of

15    the untimely resignation of counsel for Mr. Kassar.

16    　　　　"The Panel has unanimously decided to provide

17    Mr. Kassar until Monday, July 17th, 2006, to retain new

18    counsel.  The Panel urges Mr. Kassar to retain new

19    counsel as soon as possible, so that such counsel may

20    have time to begin preparation for the proceedings in

21    this matter.  Failure by Mr. Kassar to retain new counsel

22    by said date shall be taken as a decision by Mr. Kassar

23    to represent himself in the matter."

24    　　　　In the face of the explicit statement of this

1  Panel, and of the explicit violation of the NASD orders,

2  I believe Mr. Good was absolutely correct in his

3  assertion that the grounds raised by Mr. Gopstein in his

4  initial motion, and in his motion for reconsideration,

5  did not warrant a basis for granting a continuance.

6  Certainly that's borne out by the arbitrator's manual.

7           So the essential argument that Mr. Good should

8  be disqualified because he did not rule in a manner

9  consistent with Mr. Kassar's counsel's desire, obviously

10  cannot be a basis for, quote, "bias or disqualification,"

11  and therefore, I believe that should be rejected out of

12  hand.

13           As to the issue of the alleged conflict of

14  Mr. Edler.  First of all, as to that letter, to this

15  date, as I sit here now, I have no idea what Mr. Edler is

16  referring to in terms of a case, in terms of

17  consultation.

18           I know lots of people.  I have talked to lots

19  of people.  In terms of saying that I may have spoken to

20  someone about a class action, in which I know nothing

21  about at this point, I believe is an action on

22  Mr. Edler's part, out of an abundance of caution, to try

23  and raise the issue, to bring it to the parties.

24           First of all, I will state unequivocally that I

1   have no appearance with Mr. Edler's firm, or in any other

2   proceeding involving Mr. Edler's firm.  So I am not

3   co-counsel, as Counsel seems to suggest, in any way, in

4   any manner, with Mr. Edler.

5        Secondly, the fact that I have spoken to other

6   people -- I have served as the Chairman of the Federal

7   Civil Procedure Committee for the Chicago Bar

8   Association.

9        The fact that I've spoken at those proceedings

10  at different times, or with different counsel, cannot

11  disqualify me from other matters.  And therefore, I

12  believe Counsel is attempting to manufacture a basis when

13  none exists.

14        Lastly, the point that there is no time limit

15  set forth for disqualification of arbitrators, based upon

16  the rules, I agree with Mr. Gopstein that the rule is

17  silent.

18        However, what Mr. Gopstein fails to ignore,

19  fails to raise, is that Mr. Birch and I both

20  affirmatively agreed to proceed with Mr. Edler.

21  Therefore his assertion that this is still an open issue

22  is incorrect.

23        Mr. Birch had the opportunity, and

24  affirmatively agreed to proceed with Mr. Edler at that

1    time.   He subsequently chose to withdraw literally the

2    day before the hearing was set, May 16th.

3           For Mr. Gopstein to now resurrect that decision

4    and that action by the part of prior counsel, I believe,

5    is, first of all, inappropriate and unsupported.

6    Therefore, I believe that the Director was correct when

7    the Director declined to disqualify Mr. Good and

8    Mr. Edler.   I believe that the motions made at this point

9    lack foundation.

10          And that Mr. David Peregrin, who has waited two

11   years for the opportunity to present his hearing, his

12   case, a case involving actions that essentially took

13   place over a period of three months, that he has long

14   awaited his opportunity for hearing, and he should be

15   granted that opportunity to proceed.

16          I therefore request that the three motions set

17   forth by Mr. Gopstein on behalf of Mr. Kassar be denied.

18   Thank you.

19          CHAIRMAN EDLER:   Thank you very much.

20          Mr. Gopstein, would you like to reply?

21          MR. GOPSTEIN:   Yes.   I appreciate that

22   opportunity very much, and again I'll try to be brief.

23          With respect to the motion to vacate the

24   October 14th order, and the disqualification of

1   Arbitrator Good, I would just say that my adversary

2   misses the point entirely.

3           It is not the substantive decision that I'm

4   quarreling with.  The fact that Mr. Good apparently

5   decided against my motion is not the point.  The point is

6   that he had pre-judged it.

7           So it's not that I'm quarreling with his

8   decision.  I am objecting to the fact that, number one,

9   he was even permitted to participate in that vote because

10  he declined to hear the oral arguments, or was

11  unavailable.  For whatever reason, he did not hear the

12  oral arguments.

13          We had stipulated to two arbitrators.  There

14  was no discussion of what would happen in the event of a

15  tie vote, and there clearly was no agreement that we

16  would go to the non-participating arbitrator to break a

17  tie vote.  And so he should not have participated.

18          But what's really the basis for the

19  disqualification motion is the fact that he pre-judged

20  that.  He said that he would be -- he was positive, quote

21  unquote, "positive," that he would vote against any

22  postponement.  He said that at 12:15 before the oral

23  arguments.

24          That, to me, shows that an arbitrator has made