1   a decision or pre-judged an aspect of the case, and then

2   you begin to wonder how many other aspects of the case

3   the arbitrator may have pre-judged.

4          You've got to have an open mind.  You've got to

5   hear the evidence.  You've got to hear the oral

6   arguments.  You've got to sit, and be fair and impartial,

7   and keep an open mind.  And apparently that is not the

8   case here, and that's the basis for our motion to have

9   him resign or be disqualified.

10          With respect to yourself, Mr. Edler, two

11  statements that Mr. McGurk just made, I believe, are

12  categorically incorrect.

13          One, he says that we have tried to manufacture

14  a basis for your disqualification that does not exist.

15          Mr. McGurk needs to read your letter.  We have

16  not manufactured anything.  You disclosed what you

17  believed to be a conflict of interest.  The Chairman said

18  twice, in this letter, "A possible conflict of interest

19  has just arisen," and in the concluding paragraph,

20  "Please advise the parties of this conflict of interest

21  and give them the opportunity to select another

22  arbitrator," et cetera, et cetera, "to avoid any possible

23  bias."

24          There are legions of cases on the issue of

1  appearance of bias.  We don't even need to get into

2  actual bias.  There is unquestionably an appearance of

3  bias here when one of the arbitrators, the Chairman of

4  the Panel, is actually working on the same side of a

5  litigation that claimant's counsel is working on.

6          And it doesn't matter whether either one of

7  them says, "Oh, we think we could be fair.  We believe we

8  could be fair.  I don't even know this gentleman."

9  That's irrelevant.

10         There's a conflict of interest that has been

11 admitted.  There's an appearance of bias that's

12 undeniable.  And for that reason, the Chairman quite

13 properly, absolutely properly, disclosed this and gave

14 the parties an opportunity to have a new arbitrator

15 appointed.

16         So the only thing that we could possibly be

17 discussing here is not whether we have manufactured a

18 basis that does not exist, which is flat wrong.

19         The only thing we can talk about is timeliness.

20 Has this motion been made in a timely fashion?  I believe

21 it has.

22         First of all, for the sake of fairness and

23 dignity, and in the interest of justice, there's no

24 question that the conflict still exists.  The same

1    grounds for the disclosure that were made in April still

2    exist.  It's just that we are two months later on,

3    further into the process.

4            Mr. McGurk has admitted, because he had to

5    admit, that the NASD rules do not set a deadline.  The

6    cover letter just making this disclosure didn't set a

7    deadline.  The NASD rules do not set a deadline.  All

8    they say is that you can't object to something that you

9    were aware of at the time of the original selection.

10           This is not -- this was not disclosed at the

11   time of the original selection.  This was disclosed six

12   or seven months later on.  And so we make this motion.

13           And I am absolutely unaware and believe, again,

14   that Mr. McGurk is incorrect in saying that my client's

15   former counsel affirmatively agreed to have Mr. Edler

16   continue to serve.

17           I spoke with Mr. Birch on Friday.  He said no

18   such thing ever happened.  I asked him.  He didn't even

19   recall that the disclosure was made.  He said there's no

20   way that he would have affirmatively agreed.  He didn't

21   use the word "affirmative," but he said, there's no way

22   that he would have consented to it, and he didn't consent

23   to it.  And if I'm incorrect, or if there's some document

24   that shows that he did, I certainly want to see it,

1  because I'm unaware that Mr. Birch at any point

2  consented.

3         And I've said that two or three times in my

4  letters, that Mr. Kassar has not waived the conflict.  He

5  has not waived his objection.  He has not consented to

6  the composition of this Panel other than at the time of

7  the original selection, which was many months before the

8  disclosure.

9         So in conclusion, yes, there has been a series

10  of adjournments in this case.  Yes, the case was filed

11  two years ago, but a disclosure was made only a few

12  months ago, in April of this year, that a conflict had

13  arisen.  The conflict still exists, and for that reason,

14  I think that Mr. Edler should resign or be disqualified.

15         With respect to the payment of the fees, just

16  one last thing.  Mr. McGurk started his presentation

17  reciting Rule 10319 regarding adjournments.

18         It is my understanding that the NASD used to

19  have a practice of actually requiring that checks be sent

20  in at the time you were requesting an adjournment, and

21  they wouldn't even process the adjournment request unless

22  it came in with a check.  That's no longer the case.

23  These fees that are assessed with respect to adjournments

24  are discretionary with the Panel.

1           Now the NASD will accept adjournment requests

2   without checks.  They do that routinely.  And then

3   there's always a discussion as to who should pay the

4   fees, if any.  And the Panel also has the discretion to

5   waive those fees.

6           So I don't think that Mr. Kassar has violated

7   Rule 10319 in any respect.  And thank you again.

8           MR. KASSAR (telephonically):  Sheldon, could I

9   ask a question here?

10           MR. GOPSTEIN:  You can only do that privately,

11   if you want.  I don't know how we do that, but--

12           MR. KASSAR:  I think you need to know what I

13   have to say before you conclude.·

14           MR. GOPSTEIN:  You would need to ask the

15   Chairman if you want to make a statement.

16           MR. KASSAR:  Mr. Chairman, I'd like to make a

17   statement, if it's okay with you.

18           CHAIRMAN EDLER:  I'm sorry.  Did you address

19   something to the Chair?

20           MR. GOPSTEIN:  I don't know if you can hear

21   that.  I have -- my client is on the phone as well, as I

22   disclosed early on.  And he just, at the conclusion of my

23   comments just now, told me that I'm forgetting to say

24   something, and I asked him if he could hold the thought,

```
 1    and I'll speak to him later.  He said it was very

 2    important.

 3          Do you want him -- do you want to allow him to

 4    say something at this point, or should I...

 5          CHAIRMAN EDLER:  Just hold for second.  I want

 6    to confer with Mr. Good.

 7          MR. GOPSTEIN:  Okay.

 8               (Brief pause.)

 9          MR. GOPSTEIN:  Bill, just remember we're on a

10    conference call.

11          MR. KASSAR:  Yes, right.

12          MR. GOPSTEIN:  Are you sure you want to say

13    something without talking to me first?

14          MR. KASSAR:  Call me on the other line.

15          CHAIRMAN EDLER:  We don't -- well, we don't

16    want to delay this.  We just don't think -- Mr. Good and

17    I just don't think it's quite appropriate.  We don't want

18    to put your client under oath.

19          I think you've had more than enough time,

20    Mr. Gopstein, to get the facts.  So I'm going to deny

21    having any testimony from Mr. Kassar at this time.

22          I would like to ask Mr. McGurk if he has any

23    final words.

24          MR. McGURK:  The only question is,
```

1    Mr. Gopstein, I do not understand you to be making the

2    argument that Mr. Birch did not receive the April 4

3    letter.

4              MR. GOPSTEIN:  No, I didn't say that.

5              MR. McGURK:  All right.  That's all I want to

6    confirm.  Mr. Birch did get the letter?

7              MR. GOPSTEIN:  I am not aware that he -- you

8    said that he affirmatively consented to proceeding with

9    Mr. Edler.  I don't think that's correct.  But if you

10   have any document that shows otherwise, I'd like to see

11   it.

12             CHAIRMAN EDLER:  Okay.  Well, the Panel would

13   like to thank both Counsel for stating their positions

14   very clearly.  I think we clearly understand it.

15             I would like to step out in the hall with

16   Mr. Good and try to, very briefly, discuss these things.

17             So I recommend that you stay on the line.

18   We'll try very hard to dispose of these as quickly as we

19   can, and then we won't have to reconnect everybody.  So

20   we'll be back very shortly, I think.

21             (Brief recess.)

22             CHAIRMAN EDLER:  Mr. Gopstein?  Hello?

23             A VOICE:  Hold on.  I'll get him.

24             (Brief pause.)

1          He's coming right now.

2          CHAIRMAN EDLER:  Thank you.

3          A VOICE:  You're welcome.

4          MR. GOPSTEIN:  Hello.

5          CHAIRMAN EDLER:  Hello, Mr. Gopstein?

6          MR. GOPSTEIN:  Yes.

7          CHAIRMAN EDLER:  Okay.

8          MR. GOPSTEIN:  Mr. Chairman?

9          CHAIRMAN EDLER:  Yes.

10          MR. GOPSTEIN:  Is it all right if I just convey

11    one statement that my client -- he wanted to correct one

12    thing.  And so I just wanted to...

13          CHAIRMAN EDLER:  Sure.  Go ahead.  Try to make

14    it brief.

15          MR. GOPSTEIN:  He indicated to me that when his

16    former counsel resigned, he did not request a

17    postponement at all.  He just heard from the NASD that

18    the arbitration had been postponed, basically, on their

19    own accord.  He did not request any adjournment in May of

20    this year.  That's all.  He just wanted to clarify that

21    point.

22          CHAIRMAN EDLER:  We appreciate that

23    clarification.  Let me--

24          MR. McGURK:  Can I ask, Mr. Gopstein, are you

1    someplace where we can send you a fax?

2              MR. GOPSTEIN:  Yes.

3              MR. McGURK:  All right.  What is the fax

4    number?

5              MR. GOPSTEIN:  Best number to use, let's see,

6    is 914-472-7779.

7              MR. McGURK:  All right.  I'm going to fax you a

8    single page document, but I'm going to read it into the

9    record first.

10             This is a letter -- and I'm showing it to the

11   Panel.  It is on the letterhead of William E. Kassar,

12   Junior, 9 Tappanwood Drive, Lattingtown New York, 11560,

13   dated May 15th, 2006, addressed to

14   Mr. Edward T. Anderson, NASD Dispute Resolution, Inc.

15   Re:  Peregrin v. Milestone.

16             "Dear Mr. Anderson:  Today I was informed that

17   my prior attorney, Robert Birch, has withdrawn as my

18   counsel for this case.  The hearing for this matter is

19   currently scheduled for May 17th through 19th, 2006.

20             "In order to either retain new counsel or

21   prepare for the hearing, on my own, I would like an

22   adjournment in order to do so.

23             "My prior counsel informed me that a conference

24   call regarding my adjournment request may be necessary.

1    If a conference call is needed, I can be reached on my

2    mobile number above at any time.

3          "It is important that I be given an opportunity

4    to adequately defend myself at this hearing.  I do not

5    have my files from my attorney yet, and it would be

6    impossible for me to proceed on Wednesday.  Sincerely,

7    William E. Kassar, Junior."

8          A cc to James R. McGurk.  I'll fax a copy of

9    this to you, Mr. Gopstein.  Thank you.

10          MR. GOPSTEIN:  Thank you.  Based upon that

11   letter, I obviously stand corrected on that little point.

12   And my client obviously doesn't remember that letter, but

13   if you're telling me that the letter was sent, it was

14   sent.

15          CHAIRMAN EDLER:  Okay.  Gentlemen, we thank you

16   for all of the facts and arguments you have given us.

17   Mr. Good and I have made a decision.

18          I want to consult with him for one minute to

19   see if this recent disclosure in any way changes our

20   view.  We will be back with you extremely shortly.

21   Probably in a minute.

22          MR. GOPSTEIN:  Could I ask one question before

23   you go?

24          CHAIRMAN EDLER:  Yes, you may.

1          MR. GOPSTEIN:  Could you just explain the

2    procedure that's taking place this morning?  You said

3    that Mr. Duffy is not there.

4          CHAIRMAN EDLER:  We will explain that shortly.

5          MR. GOPSTEIN:  Oh, okay.  Okay.  Okay, thanks.

6                (Brief pause.)

7          CHAIRMAN EDLER:  Okay.  This is Mr. Edler, the

8    Chair.  Mr. Good and I have met and have considered the

9    arguments made today by both Counsel.  And we appreciate

10   the arguments, and we appreciate the care with which

11   you've delivered them.

12          Based on the arguments and how we view them, I,

13   Mr. Edler, am unwilling to recuse myself or resign as an

14   arbitrator.  Mr. Good is unwilling to recuse himself and

15   resign as an arbitrator.

16          For the record, we understand that the Director

17   of Arbitration of the NASD has similarly declined to

18   disqualify either myself -- Mr. Edler -- or Mr. Good.

19          I would now like to announce the fact that this

20   morning, shortly before we joined you in this conference

21   room, Mr. Duffy decided to resign as an arbitrator, and

22   did resign as an arbitrator.

23          Consequently, we are now in the position of

24   having two arbitrators, not three arbitrators.  And as

1    Mr. Good and I understand the rules, that means we cannot

2    proceed with this hearing unless both parties agree to

3    proceed with two arbitrators.

4            So I now ask you, first, Mr. Gopstein, are you

5    willing to proceed with two arbitrators?

6            MR. GOPSTEIN:  I would need to confer with my

7    client very, very briefly.

8            CHAIRMAN EDLER:  Okay.  Can you do so while we

9    wait?

10           MR. GOPSTEIN:  Yes.  Keep the line open and I'm

11   going to try to call him on a cell phone.

12           CHAIRMAN EDLER:  Very fine.  Wait a second.

13   Mr. Gopstein?

14           MR. GOPSTEIN:  Yes.

15           CHAIRMAN EDLER:  Why don't we ask other

16   Counsel?  Because obviously, if he says no, then you

17   don't even have to be bothered.

18           Mr. McGurk, would you proceed with two

19   arbitrators?

20           MR. McGURK:  I would agree on behalf of the

21   claimant, Mr. Peregrin, to proceed with two arbitrators.

22   Obviously, because of the passage of time, we think it's

23   important to proceed.

24           CHAIRMAN EDLER:  Okay.  In that case,

1    Mr. Gopstein, would you go ahead and talk with your

2    client and get back to us as soon as possible?

3              MR. GOPSTEIN:  Be back very, very quickly.

4              CHAIRMAN EDLER:  Thank you.

5                   (Brief pause.)

6              MR. GOPSTEIN:  Bill, are you on the line?

7    Bill?

8              CHAIRMAN EDLER:  Mr. Gopstein, we are hearing

9    you now, so perhaps you need to go to another line.

10             MR. GOPSTEIN:  You know what?  I actually just

11   picked up this line.  He's apparently dropped off of this

12   line, and I can't reach him on the cell phone.  Just give

13   me one more minute.

14             CHAIRMAN EDLER:  Okay.

15             MR. GOPSTEIN:  Bill, are you hearing us?

16                  (Brief pause.)

17             I guess not.  Okay.  Let me just try to reach

18   him.  One more minute.  I apologize.

19                  (Brief pause.)

20             MR. GOPSTEIN:  Yes.  Sheldon Gopstein here.

21   I'm back.

22             CHAIRMAN EDLER:  Yes.  We hear you clearly.

23   Thank you, Mr. Gopstein.

24             MR. GOPSTEIN:  Thank you.

1          My client declines to proceed with two

2   arbitrators.

3          CHAIRMAN EDLER:  Okay.  That being the case,

4   I'm going to ask Mr. Luzi, of the NASD Dispute

5   Resolution, who is still present with us, to explain a

6   bit about whether he believes he can try to get an

7   arbitrator sometime today to fill in as the number three

8   arbitrator so that we can proceed with the hearing

9   tomorrow morning as a second scheduled date.

10          Mr. Luzi, would you explain that for us,

11   please?

12          MR. LUZI:  Well, essentially, I can go back to

13   the office, and we can attempt to get--

14          CHAIRMAN EDLER:  So everybody could hear you,

15   could you come up closer to the microphone here and speak

16   up?  Thanks.

17          MR. LUZI:  Sure.  We can attempt this afternoon

18   to make an appointment of a third arbitrator and fax out

19   the information on that arbitrator to the parties.

20          We'll see what we can do, but it will be

21   contingent on our ability to get somebody appointed and

22   confirmed with the parties.

23          CHAIRMAN EDLER:  Okay.  Basically based on

24   that, we, the Panel, advise the parties that we will

1    reconvene at this table tomorrow morning at 9:00 a.m.,

2    if a substitute arbitrator has been appointed today.

3              And if a substitute arbitrator cannot be

4    appointed today, then we will not meet here tomorrow, and

5    we will leave it up to Mr. Luzi to proceed with

6    appropriate procedures to come up with a new set of

7    hearing dates.

8              MR. LUZI:  Yes.

9              MR. GOPSTEIN:  Okay.  I don't want to

10   interrupt.  Just tell me when you're done.  This is

11   Mr. Gopstein.

12             CHAIRMAN EDLER:  Yes.  I'm finished.  Do you

13   have any questions, Mr. Gopstein?

14             MR. GOPSTEIN:  Yes, I do.  A few questions and

15   then some concerns.

16             My question -- and I need to review the rules

17   quickly.  I believe that with the appointment of any

18   replacement arbitrator, we are entitled to see the same

19   disclosures and biographical history and whatnot that

20   would apply to an initial selection.

21             And I believe -- and Mr. Luzi, you correct me

22   if I'm wrong -- that we have the same opportunity to

23   request supplementary information with respect to a

24   replacement arbitrator that we would have with respect to

1    an initial arbitrator.  Is that not the case?

2            MR. LUZI:  No.  That's what I meant when I said

3    that we would have to get somebody first to agree to

4    accept the appointment, and then get all of the

5    information to the parties, and then have that person

6    confirmed.

7            MR. GOPSTEIN:  Right.  Okay.  I think it's

8    almost logistically impossible to do that.  And I also

9    think that it would be unfair to have to ask someone to

10   step in here and basically familiarize them with the

11   entire file and show up, we're now talking less than 24

12   hours maybe, or you know, 18 hours after his or her

13   appointment.

14           Having said that, I guess we'll just follow the

15   rules and see where this process leads.

16           But let me just make a final application, if I

17   would.  And some of this depends on consultations,

18   obviously, confidential consultations that I'm going to

19   need to have with my client after we conclude this

20   conference.

21           But I believe that my client's intent here is

22   to go to court and have the issue of the arbitrators'

23   recusals or disqualification decided in a court of law.

24   I couldn't possibly have that done, at this point, before

1    tomorrow morning.

2            And so I would ask at this point, considering

3    that it is virtually impossible to get -- even if we were

4    to follow the NASD rules to the letter -- to get a

5    replacement arbitrator appointed, up to speed, and ready

6    to serve by tomorrow morning.

7            But I would ask that that not be done in any

8    event so that we have an opportunity to go to court and

9    have a judge decide the issue of these two arbitrators.

10           CHAIRMAN EDLER:  I will confer briefly with

11   Mr. Good and see if we need to confer at length on that

12   request.  But if you'll just hold for a minute, let us

13   see if -- oh, and excuse me.  I do need to let Mr. McGurk

14   address this issue.  I'm sorry.

15           MR. McGURK:  I will stand by the decision of

16   the Arbitration Panel and of the NASD Director.

17           As to the issue of the Panel somehow adjusting

18   the schedule based on considerations outside of this

19   proceeding, I certainly would object to that.

20           Obviously, Mr. -- and as to the issue of, if

21   tomorrow is not available, I would simply point out that

22   Mr. Gopstein himself has indicated that he is available a

23   week from today for an arbitration proceeding, and would

24   raise that point that if it were necessary, that we

1    simply adjourn a week from today -- I'm sorry, resume a

2    week from today -- since he has stated that, I believe,

3    several times himself.

4              CHAIRMAN EDLER:  Okay.  I thank you.  Let me

5    then confer briefly with Mr. Good, and we'll get back to

6    you shortly.

7                        (Brief recess.)

8              CHAIRMAN EDLER:  We're back on the record.

9              Mr. Gopstein, I will advise you that Mr. Good

10   and I are looking into the possibility of adjourning this

11   until the 25th and 26th.  I am available then.

12             Mr. Good is presently calling his office to get

13   his calendar and see if he is available.

14             I think I heard from Mr. McGurk that you would

15   be available?

16             MR. McGURK:  Absolutely.

17             CHAIRMAN EDLER:  Okay.  So, Mr. Gopstein, I

18   wanted to ask you before we spend too much time on this--

19             MR. GOPSTEIN:  Oh, you were addressing the

20   question to me or to Mr. McGurk?

21             CHAIRMAN EDLER:  Now I'm addressing it to you,

22   Mr. Gopstein.  Would you be available to proceed with

23   this matter on the 25th and 26th, next Monday and

24   Tuesday?

1      MR. GOPSTEIN:  Oh, no.  No.  We have a

2  disqualification issue, and I have objected to the

3  composition of the Panel, and I want to -- I think I need

4  to pursue that issue.

5      Just by -- you know, one week isn't going to

6  change the arguments as to your conflict of interest, and

7  the issues that I raised with respect to Mr. Good.  I had

8  just asked for some time so that I can go into court.

9      Obviously it's more advantageous to get the

10  issue resolved before a hearing than to have a whole

11  hearing take place and then move to vacate the award, if

12  that's necessary.  So I would rather do this now rather

13  than later.

14      But I am a sole practitioner and, you know, one

15  week to prepare a motion, and a brief, and everything

16  else that is required is extremely difficult,

17  considering, as I've mentioned several times before, I

18  loaded up my schedule this week, thinking that I was

19  going to have a hearing next week.

20      So I've got three other deadlines looming this

21  week -- one today, one the 20th, and one the 22nd.  And I

22  don't know how it would be possible to be able to draft

23  motion papers and get them filed with an order to show

24  cause and a stay of this hearing all by next -- I'd have

1    to do it by Friday, in essence, in order to get the

2    hearing stopped, if it were scheduled for the 25th.

3         So clearly I would want more than a week to

4    bring this matter before a court.

5         CHAIRMAN EDLER:  We are not -- as a Panel, we

6    are not interested in addressing your various

7    alternatives to go to court.  That is strictly within

8    your province and that of your client.  Obviously that's

9    not our business, and it's not going to be our concern.

10        The fact is that -- is it not, Mr. Gopstein --

11   you mentioned in recent correspondence that you would

12   have been willing to have this hearing on the 25th and

13   26th?

14        MR. GOPSTEIN:  That's correct.  I did say that.

15   That's what my client informed me, and that's because, as

16   we well know by now, that's the mistake that Mr. McGurk

17   made in his letter to my client.  So those are the dates

18   that I originally had cleared for hearing.

19        CHAIRMAN EDLER:  Okay.

20        MR. McGURK:  Excuse me.  I'm sorry to

21   interrupt.

22        First of all, there was a letter sent on

23   July 24th by myself, in which I erroneously identified

24   September 24th and 25th.

```
 1            I would also point out that there was a letter
 2    that was sent on July 25th by the NASD, with a copy to
 3    Mr. Kassar's address at 9 Tappanwood Drive, Lattingtown,
 4    New York 11560, with the September 18th address.
 5    Subsequently, I sent a letter on July--
 6            MR. GOPSTEIN:  Well, my understanding -- this
 7    is Mr. Gopstein.
 8            My understanding is that Mr. Kassar got no
 9    independent notice from the NASD regarding the hearing
10    dates.  And actually the hearing date that you indicated
11    in your letter were the 25th and the 26th.
12            And I believe that those letters by the NASD
13    were going to a Locust Valley address, not his
14    Lattingtown address.
15            MR. McGURK:  This is James McGurk.
16            On July 27th, 2006, I sent a FedEx package to
17    Mr. Kassar with a copy of the July 25th, 2006, notice of
18    the September 18th date.  I'll bring in the signature
19    card showing that FedEx delivered it to Mr. Kassar at
20    that address.
21            The point being that the issue of the mistake
22    was corrected both by the NASD and by myself in terms of
23    enclosing, sending by FedEx, not by post office, the
24    correct notification.
```

1          In any event, I agree that the Panel is correct

2    in terms of acting in terms of its setting, regardless of

3    the parties' choice to proceed or not to proceed with

4    some other court matter, because I believe that is for

5    the parties to make their own conclusions as to what, if

6    any, they should draw.

7          Therefore, I would urge the Panel to set the

8    September 25th and 26th dates.

9          CHAIRMAN EDLER:  Okay.  This is the Chair, and

10   based on my discussion with Mr. Good, we rescind our

11   conclusion and order that we meet tomorrow at 9:00 a.m.,

12   and instead issue the following order.

13         That the parties meet either here, or wherever

14   else the NASD advises the parties to meet, next Monday,

15   the 25th, at 9:00 a.m., reserving the next day, the 26th

16   at 9:00 a.m., to have a hearing in this matter.

17         We are doing this on the basis that Mr. Good is

18   available.  I, Mr. Edler, am available.  Mr. McGurk and

19   his clients are available.  And I distinctly recall one

20   or more letters from Mr. Gopstein in just the last few

21   days saying that he would be willing to have the hearing

22   on the 25th and 26th.

23         So we are going to proceed on the 25th at 9:00

24   a.m. assuming, of course, that a third arbitrator has

1   been appointed and accepted in accordance with the NASD

2   rules.  Obviously, if there's no third panelist, we'll

3   have to reconsider this matter.

4                  Are there any questions?

5                  MR. McGURK:  The claimant has no questions.

6                  CHAIRMAN EDLER:  Mr. Gopstein, any questions?

7                  MR. GOPSTEIN:  No questions.

8                  CHAIRMAN EDLER:  Okay.  Is there anything else

9   that anyone feels must be addressed at this time?

10  Mr. McGurk?

11                 MR. McGURK:  The only point that I would add is

12  that -- and we've not addressed this before -- the

13  Milestone Group Management, LLC, I believe, is in fact

14  out of business, but they have continued to receive

15  notices.

16                 I would simply ask that the NASD provide the

17  same notice to that entity since they, too -- at least on

18  paper -- still remain party to the case.

19                 CHAIRMAN EDLER:  Thank you.  Mr. Luzi, do I see

20  you indicating you will do that?

21                 MR. LUZI:  We will continue to do that, yes.

22                 CHAIRMAN EDLER:  The NASD will continue to do

23  that.  Thanks, Mr. McGurk.

24                 MR. McGURK:  Thank you.

1          CHAIRMAN EDLER:  Mr. Gopstein, do you have

2    anything else that needs to be addressed that this point?

3          MR. GOPSTEIN:  Nothing further.  Thank you.

4          CHAIRMAN EDLER:  Okay.  Well, we thank everyone

5    for attending.  We apologize to everybody in this room

6    who attended for no good reason, as it turns out.  These

7    things happen.  We're sorry.

8          We thank Counsel for their excellent, clear

9    presentations, and I hope we'll see all of you next

10   Monday, the 25th, at 9:00 a.m., either in this room or in

11   some other room that the NASD advises us we will meet.

12          Thank you very kindly.  And now I adjourn this

13   hearing.

14                    (WHEREUPON, an adjournment was taken to

15                    Monday, September 25th, 2006.)

16

17

18

19

20

21

22

23

24

```
 1    STATE OF ILLINOIS )
                        )   SS.
 2    COUNTY OF C O O K )

 3

 4            I, THOMAS A. MANNO, C.S.R. and Notary Public,

 5    do hereby certify that I reported in machine shorthand

 6    the proceedings had on the arbitration in the

 7    above-entitled cause; that I thereafter caused the

 8    foregoing to be transcribed, which I hereby certify to be

 9    a true and accurate report of proceedings had before the

10    Arbitration Panel, ROBERT W. EDLER, Chairman.

11

12

13

14                           Thomas A. Manno, C.S.R.
                             License No. 84-001174
15

16

17

18                    OFFICIAL SEAL
                      THOMAS A MANNO
19          NOTARY PUBLIC STATE OF ILLINOIS
            MY COMMISSION EXP. OCT. 25,2006

20

21

22

23

24
```