BEFORE THE NATIONAL ASSOCIATION
OF SECURITIES DEALERS

DAVID G. PEREGRIN,                   )
                                     )
            Claimant,                )
                                     )
        -vs-                         )   NASD No. 04-06892
                                     )
MILESTONE GROUP MANAGEMENT, LLC,)
and WILLIAM E. KASSAR, JR.,          )
                                     )
            Respondents.     )


    Record of proceedings had at the hearing of the
above-entitled cause, before the Arbitrators on the 25th
day of September, 2006, at the hour of 1:00 p.m.


PRESENT:

    Mr. James A. McGurk,
        Appeared on behalf of the Complainant;

    Mr. Sheldon H. Gopstein,
        Appeared on behalf of the Respondent.

ARBITRATORS:

    Mr. Michael Gedzun
    Mr. Robert Edler
    Mr. Kenneth Good


**EXHIBIT B TO DECLARATION OF JAMES McGURK DATED MAY 20, 2008**

1      ARBITRATOR EDLER:  The first order of business is to

2  make a decision as to whether the parties would like to

3  have a transcript and a -- what do you call -- a tape

4  recording or just a transcript?

5      MR. MCGURK:  On behalf of the claimant, my request

6  would be that we have both.

7      ARBITRATOR EDLER:  I think we only need one.  But if

8  you say to have both, we will proceed and have a tape

9  recording, which means we should stop for a moment and be

10  sure the tape machine is available.

11                      (Discussion off the record.)

12      ARBITRATOR EDLER:  Good afternoon, everyone.  This

13  is the Peregrin Arbitration.  And we have determined, as

14  I understand it, that we are going to make a transcript

15  of this proceeding, which will be at the expense of the

16  claimant, and we will also keep a tape record of the

17  proceeding.

18          I would now like to introduce the Arbitrators.

19  On my left is Mr. Kenneth Good.  And on my right is

20  Mr. Michael Gedzun, G-e-d-z-u-n.  And I'm Robert Edler,

21  E-d-l-e-r.

22          Regarding disclosures previously made by the

23  arbitrators, we are supposed to restate those

24  disclosures.  I'll begin by simply mentioning that my son

1    had been a summer clerk for Bare Sterns approximately 22

2    years ago.   That had been disclosed at the outset of this

3    proceeding.

4         And I had also disclosed in a letter, which has

5    been the subject of some prior proceedings, that

6    co-counsel of mine in a lawsuit had had some one or more

7    discussions with Mr. McGurk, Counsel for the claimant in

8    this proceeding.   And I won't go into that further

9    because it has been the subject of considerable

10   discussion today.

11        Mr. Good, would you restate any disclosures

12   that you have made?

13        ARBITRATOR GOOD:   I have nothing new to disclose.

14        ARBITRATOR EDLER:   Did you disclose anything

15   previously?

16        ARBITRATOR GOOD:   I believe so.

17        ARBITRATOR EDLER:   Do you recall?   We are supposed

18   to restate here.

19        ARBITRATOR GOOD:   Well, I'm the managing partner of

20   a Chicago law firm.   I have many investment accounts with

21   many different entities.   I'm an American Arbitration

22   Arbitrator.   I'm the Judge for the City of Highland Park.

23   I am primarily a plaintiff's lawyer.   I have extensive

24   experience in arbitration.   My son is a member of a major

1    international law firm.  Other than that, I have nothing

2    to add.

3        ARBITRATOR EDLER:  Thank you.  Mr. Gedzun, if you

4    had anything to disclose, would you, please, restate it.

5        ARBITRATOR GEDZUN:  I explained a couple yes answers

6    on my arbitrator disclosure report.  One of them was

7    in 1990, I was a party to an arbitration myself.  And in

8    1998, I retired from the brokerage business.  Since that

9    time all my licenses have lapsed.  So it's not really

10   indicated clearly on the report itself.  I cleared those

11   up.  Also I served on a panel with Mr. Edler in 1998.

12       ARBITRATOR EDLER:  Thank you.  And that was a

13   disclosure, which I probably should have made, and I'm

14   embarrassed to say that I forgot about that.  But I have

15   not had the pleasure of seeing Mr. Gedzun since that

16   time.

17           I would now like to have Counsel introduce

18   themselves and each of the parties that are with them

19   here today.  Mr. McGurk, would you, please, start.

20       MR. MCGURK:  Yes.  My name is James A. McGurk.  I'm

21   Counsel for the claimant in this proceeding.  The

22   claimant is Mr. David Peregrin who sits to my right.  And

23   sitting to Mr. Peregrin's right is his wife Kathy.

24   Sitting at the end of the table to my right is

1   James P. Ryan, the claimant's expert in this proceeding.

2       ARBITRATOR EDLER:  Thank you kindly.  And

3   Mr. Gopstein, would you, please, introduce yourself and

4   your client.

5       MR. GOPSTEIN:  Sure.  Good afternoon, gentlemen.  My

6   name is Sheldon Gopstein.  I'm an attorney.  I represent

7   -- have the privilege of representing the Respondent

8   William E. Kassar, Jr. in this proceeding.

9       ARBITRATOR EDLER:  Thank you.  And the only other

10  person in the room is Mr. Patrick Walsh of the NASD.

11      MR. WALSH:  My name is Patrick Walsh, W-a-l-s-h, of

12  the NASD resolution.

13      ARBITRATOR EDLER:  Thank you, Mr. Walsh.  I would

14  now like to ask for oral confirmation from the parties of

15  whether they accept the panels' composition?  Mr. McGurk,

16  you first.

17      MR. MCGURK:  On behalf of the claimant, we accept

18  the composition of the panel.

19      ARBITRATOR EDLER:  Mr. Gopstein?

20      MR. GOPSTEIN:  On behalf of the respondent, we

21  simply would like to reserve our rights.  Obviously I

22  think it goes without saying there has been some issue.

23  We are here.  We are proceeding today with a reservation

24  of rights.

1    ARBITRATOR EDLER:  I have submitted my oath of

2    Arbitrator.  Mr. Good, I understand you have also.

3    ARBITRATOR GOOD:  I believe so.

4    ARBITRATOR EDLER:  And Mr. Gedzun, you have too?

5    ARBITRATOR GEDZUN:  Yes.

6    ARBITRATOR EDLER:  It's been so long.  If either of

7    the parties would like these two arbitrators to renew

8    their oath of arbitrator, at this point we would be happy

9    to do so.

10    Would either party like that?  We both believe

11    we submitted it long ago, but we have forgotten.

12    MR. GOPSTEIN:  We'll take your word for it.  As long

13    as they are in somewhere, we will trust you.

14    MR. MCGURK:  On behalf of the claimant, we accept

15    the panel's word of taking their oath.

16    ARBITRATOR EDLER:  I would like to now formerly open

17    this hearing.  This controversy has been submitted to

18    this panel of arbitrators for a hearing in accordance

19    with the Code of Arbitration Procedure of the National

20    Association of Securities Dealers dispute resolution.

21    The panel is authorized to determine each of

22    the matters set forth in the statements submitted and

23    filed with NASD dispute resolution.  Unless the law

24    directs otherwise, all awards rendered pursuant to the

1    code will be final and not subject to appeal.

2         It is suggested that no interruptions be made

3    during an individual's testimony.  Parties are entitled

4    to make objections, cross examine, redirect witnesses,

5    and may, in the discretion of the arbitrators, present

6    rebuttal testimony.

7         The arbitrators may ask questions as they deem

8    appropriate.  The submission of this matter to

9    arbitration will not preclude any right of the

10   association that it would otherwise be authorized to

11   adopt, administer, or enforce.

12        If any matter comes to the attention of this

13   panel during and in connection with this panel's

14   participation in this proceeding either from the record

15   or from material or communications related to this

16   proceeding that this panel has reason to believe may

17   constitute a violation of the association's rules or the

18   federal securities laws, this panel may initiate a

19   referral of the matter to the association for

20   disciplinary investigation.

21        If we make any such referral, it will only be

22   initiated after this dispute has been either settled or

23   otherwise disposed of or after a final award has been

24   rendered.

1    All of us arbitrators have been selected to

2  serve as neutral arbitrators to hear and decide this

3  matter.  We have all been so selected.  We are not NASD

4  dispute resolution employees.

5    Pursuant to Canon I one of the ABA, American

6  Bar Association, AAA, American Arbitration Code of Ethics

7  for commercial arbitrators, we as neutral arbitrators

8  have the duty of conducting these proceedings with

9  fairness and integrity.  This duty extends to all parties

10  and to this process.  Therefore, on behalf of the panel,

11  I respectfully request that all parties and their

12  Counsels or representatives refrain from engaging in any

13  conversations or contact with the members of this panel

14  except while in this room and in the presence of all

15  parties, Counsel, or representatives.

16    Thank you for your anticipated cooperation.  I

17  would now like to administer an oath to all witnesses.

18    Mr. McGurk, are all the witnesses you intend to

19  present presently in this room?

20    MR. MCGURK:  Yes.

21    ARBITRATOR EDLER:  That would be Mr. Peregrin?

22    MR. MCGURK:  Mr. Peregrin, Mr. Ryan.  Ms. Kathy

23  Peregrin signed one check.  So I suppose out of caution

24  we would request that she be sworn also.  But it may not

1    be necessary to call her.

2         ARBITRATOR EDLER:  Mr. Gopstein, do you have anyone

3    other than Mr. Kassar?

4         MR. GOPSTEIN:  No.

5         ARBITRATOR EDLER:  Then if I hear no objection, I

6    would like to swear in all of these people here,

7    Mr. Kassar, the Peregrins, and the expert witness.

8              Would you, please, raise your hands and advise

9    whether you solemnly swear or affirm that the testimony

10   you are about to give shall be the truth, the whole

11   truth, and nothing but the truth.

12                     (Witnesses sworn.)

13        ARBITRATOR EDLER:  Thank you.  Will each of you,

14   please, state your name, address, and, if applicable,

15   your business affiliation.

16             So let's start with Mr. Peregrin.

17        MR. PEREGRIN:  David G. Peregrin.  I live at 23870

18   West Town Line Road, Grayslake, Illinois 60030.

19        ARBITRATOR EDLER:  Thank you.  Ms. Peregrin.

20        MS. PEREGRIN:  Katy A. Peregrin.  23870 West Town

21   Line Road, Grayslake, Illinois 60030.

22        ARBITRATOR EDLER:  Do you have any business

23   affiliation?

24        MS. PEREGRIN:  Do I?

1    ARBITRATOR EDLER:  Ms. Peregrin, you're not working

2  now?

3    MS. PEREGRIN:  No.

4    ARBITRATOR EDLER:  You're not working outside the

5  house.  And the expert witness.

6    MR. RYAN:  James P. Ryan, R-y-a-n.  I live at 9756

7  South Hamilton Avenue, Chicago, Illinois.  And I'm

8  affiliated with and sole proprietor of Ryan Consulting.

9    ARBITRATOR EDLER:  Okay.  Mr. Kassar.

10    MR. KASSAR:  My name is William A. Kassar, Jr.  I

11  live at 9 Tampinwood Drive, Allentown, New York.

12    ARBITRATOR EDLER:  Thank you kindly.  Parties and

13  corporate representatives are permitted to remain

14  throughout the proceeding.  Expert witnesses are

15  permitted to remain unless the panel determines that the

16  witness should be excused.

17    All other witnesses will now be excused and

18  will be called upon at the appropriate time unless the

19  panel determines that the witnesses will remain.

20    So I think the only question is regarding

21  Ms. Peregrin.  I'm sure, am I correct, Mr. McGurk, you

22  would request that she be able to remain?

23    MR. MCGURK:  That is the request of the claimant.

24    ARBITRATOR EDLER:  Mr. Gopstein, do you have any

1  objection?

2      MR. GOPSTEIN:  No objection.

3      ARBITRATOR EDLER:  The arbitrators have read the

4  papers that have been submitted by the parties.  These

5  papers along with the executed submission agreements will

6  be marked and received into evidence as Arbitrators

7  Exhibit No. 1.  Arbitrators Exhibit No. 1, which I have

8  in my hand, indicates that the Claimant David Peregrin

9  has submitted his submission agreement and his statement

10  of claim.  The Mileston Group, one of the respondents,

11  has not submitted a submission agreement or an answer.

12  And Mr. Kassar has submitted a submission agreement and a

13  statement of answer.

14         Does anyone know of any other documents, any

15  other pleadings that have been submitted other than the

16  ones I just mentioned?  Mr. Gopstein?

17      MR. GOPSTEIN:  I'm sorry.  Just the statement of

18  claim and the answer?

19      ARBITRATOR EDLER:  Right.  Mr. McGurk, do you agree

20  with that?

21      MR. MCGURK:  I agree there has been motion practice.

22      ARBITRATOR EDLER:  Just in terms of the pleadings.

23  I'm using pleadings to mean statement of claim, answer,

24  reply.

1     MR. MCGURK:  For clarity of the record, I believe

2  that the Respondent Mr. Kassar filed a motion for a more

3  definite statement with his answer.  That was denied by

4  an order of the panel in June of this year.

5     ARBITRATOR EDLER:  Thank you.  Are there any open

6  matters that need to be addressed at this time before we

7  proceed with the hearing?  Mr. McGurk?

8     MR. MCGURK:  I'm aware of no matters that have not

9  been resolved by the panel.

10     ARBITRATOR EDLER:  Mr. Gopstein?

11     MR. GOPSTEIN:  Yes, Mr. Chairman.  I have a -- when

12  the Chairman is ready, I have a threshold motion that I

13  would like to make at the inception of the hearing.

14     ARBITRATOR EDLER:  I think now is the appropriate

15  time.

16     MR. GOPSTEIN:  Are we ready?

17     ARBITRATOR EDLER:  Yes.

18     MR. GOPSTEIN:  Okay.  Thank you.  It may be helpful

19  if the panel has copies of the statement of claim just to

20  follow along, if you wish to do so.  The Respondent

21  William E. Kassar, Jr. hereby moves to dismiss this claim

22  against him and ask that he be permitted to leave the

23  proceeding.

24        There are four counts where causes of action

1  alleged in the statement of claim.  As the Chairman just

2  pointed out and had the parties confirm, there has been

3  no amended statement of claim, although a motion for a

4  more definite statement was requested.  And no amended

5  statement of claim was ever issued.  This is all we have

6  to deal with.  There are four causes of action.  And we

7  can go through them very quickly.

8          Count I alleges brief of fiduciary duty.  If

9  you start with Paragraph 30, it all -- it all relates to

10 Milestone and only to Milestone.  It says Milestone was

11 aware of Peregrin's inadequacy.  Paragraph 31, Milestone

12 owed a fiduciary duty.  Paragraph 32, Milestone breached

13 the above duties.  Paragraph 33, as a consequence of

14 Milestone's breach, it owed to Peregrin.  Peregrin has

15 incurred a loss.  Wherefore, claimant respectfully

16 requests that an award be entered in his favor and

17 against Milestone.

18          I think we can safely say that the first cause

19 of action does not relate to my client at all and he

20 should be dismissed or that should be dismissed as

21 against him.

22          The second cause of action is negligence.

23 Paragraph 35, Milestone owed Peregrin a duty.

24 Paragraph 36, Milestone breached the duty.  Paragraph 37,

1   as a proximate result of Milestone's breach of duty, et

2   cetera, et cetera.

3           Obviously I'm not reading the entire document.

4           Wherefore, claimant respectfully requests that

5   an award be entered in its favor and against Milestone.

6           I think we can safely dismiss the second count

7   as against Mr. Kassar.

8           Count III.  As an aside, I would also tell you

9   that there is an abundance of case law that indicates

10  that there is no private cause of action for a violation

11  of an NASD rule of fair practice.  There is no

12  independent cause of action recognized in law for an NASD

13  code violation, which is what Count III is.

14          I can site many, many cases on that.  I have

15  the cases with me, if you would like to see them.

16          But we really don't have to get there because

17  once again, Paragraph 39, Respondent Milestone by virtue

18  of its above described acts and omissions, Paragraph 40,

19  Respondent Milestone in violation of NASD Rule 2110.

20  Paragraph 41, Respondent Milestone effected transactions,

21  et cetera, et cetera.  42, as a proximate result of

22  Mileston's above described result of violations, Peregrin

23  has incurred a loss.  Wherefore, claimant requests an

24  award be entered in his favor and against Milestone.

1       Count III should be dismissed.

2       Count IV, the only remaining count.  Failure to

3  supervise.  Paragraph 44, Milestone is obligated to

4  supervise diligently.  45, the action set forth

5  constitutes a failure by Milestone.  46, as a direct and

6  proximate result of a breach of duty by Milestone, et

7  cetera, et cetera.

8       Wherefore, claimant respectfully requests an

9  award be entered in his favor and against Milestone in

10  the amount of $160,000.

11       There is no cause of action alleged against

12  William E. Kassar, Jr. at all.  I want to be very, very

13  clear about this.  This is not a minor procedural defect.

14  This is not a technical flaw that can be corrected at the

15  hearing with an amended complaint stating, oh, I meant to

16  say William Kassar.  There are four causes of action

17  alleged here.  Not one of them is against

18  William E. Kassar, Jr.

19       The only place that Bill Kassar mentioned is in

20  the preamble where you can talk all day long about third

21  parties or various facts.  You can put all the facts that

22  you want in the world in the preamble.  But what matters

23  is the causes of action.

24       How could any one prepare for a hearing or be

1    expected to defend a case where there is no claim

2    alleged?

3            Let me mention a few things in this respect.

4    Rule 10314, the NASD Code of Arbitration procedure.

5            Rule 10314 requires that the statement of claim

6    not only state the claim but it also state the relief

7    that is requested.  If you bear with me one moment, I

8    will have that for you.  I apologize for the delay.  Here

9    it is.  Rule 10314 of the NASD Code says the statement of

10    claim --

11    ARBITRATOR EDLER:  Excuse me.  Would you give the

12    subsection numbers?

13    MR. GOPSTEIN:  Yes.  Thank you.  10314, A-1 says, in

14    part, the statement of claim shall specify the relevant

15    facts and the remedies sought.  It does specify the

16    remedies sought.  The remedies sought are all against

17    Milestone, every one of them.  Bill Kassar is not

18    Milestone.  Bill Kassar is a former employee of Milestone

19    who left the firm when Milestone went out of business.

20    They are not one in the same -- clearly not one in the

21    same.

22            And so I think there is just not even a

23    question that there is no way that we could have

24    adequately prepared for this case, known what to expect,

1    known what the claims are against us, or defend this

2    without a pure guessing game as to what may or may not be

3    presented at this hearing.

4          That's not what litigation is all about.  That

5    is not what arbitration is all about.

6          The final point I'll make with respect to that

7    is that the panel -- an NASD panel has discretion to

8    apply the rules of evidence.  It even says it in the

9    code, that the rules of evidence can be relaxed somewhat

10   with respect to -- in these arbitration proceedings.

11         Law cannot be disregarded by an NASD panel.

12   For instance -- I may be telling you something that you

13   already know.  If that's the case, I apologize.  I know

14   each one of you is an experienced arbitrator.  When there

15   are issues as to evidence as to whether certain documents

16   come in, sometimes the formal rules for laying foundation

17   and things of that nature are relaxed because we are in

18   somewhat of a more informal forum.  That is not the case

19   when it comes to law.

20         On a fundamental substantive issue like this

21   where there is literally no claim made against my client,

22   I do not believe the panel has discretion to excuse that

23   or to waive that.

24         And I think the case needs to just be dismissed

1  against Bill Kassar.  You can certainly proceed today

2  even, even in the absence of Milestone Management.

3  Mr. Peregrin may or may not be granted relief as against

4  Milestone, and he may or may not have remedies against

5  Milestone.  But my client needs to be dismissed from the

6  case.  Thank you.

7      ARBITRATOR EDLER:  Mr. McGurk, would you honor us

8  with a response to that, please?

9      MR. MCGURK:  Yes.  The statement of claim certainly

10  describes in great detail the activity.  Counsel, in

11  fact, discusses that.  Mr. Gopstein suggests that

12  Mr. Kassar could not know what the issues were raised in

13  this claim.  Yet, in fact, the very same issues were

14  raised by the NASD Department of Enforcement against

15  Mr. Kassar.

16      MR. GOPSTEIN:  I need to object right here.  We got

17  another problem.  I ordinarily would not interrupt.

18      ARBITRATOR EDLER:  Is there any reason you can't

19  hold your objection until -- Mr. McGurk did not --

20      MR. GOPSTEIN:  He is about to prejudice this whole

21  proceeding.

22      MR. MCGURK:  Well, the issue is whether or not

23  Mr. Kassar could possibly know what are the issues that

24  Mr. Peregrin has against Mr. Kassar.  Mr. Kassar knows

1   certainly very well exactly the turnover ratio of 34

2   times in the account.  And the reason he knows that is

3   because he has agreed -- he has consented to --

4       MR. GOPSTEIN:  I'm going to object.  I'm going to

5   object.  If he insists on doing this --

6       ARBITRATOR EDLER:  I'm asking you not to object

7   unless -- I see your prior objection had merit at that

8   point.  I would like you to honor opposing Counsel as he

9   did you unless you have to object at this point.

10       MR. GOPSTEIN:  I have no choice.

11       ARBITRATOR EDLER:  What is your objection?

12       MR. GOPSTEIN:  There was an independent NASD

13   proceeding that was confidential that was settled

14   pursuant to a stipulation that specifically provides it

15   shall not be used outside of the proceeding where it was

16   held.  It has no bearing on this case.  It has no basis.

17   It can only be used to prejudice this panel.  If I did

18   not object when I did and allowed him to continue, I

19   would have moved to refuse the panel based on prejudice.

20   Then we really would have been --

21       ARBITRATOR EDLER:  Your objection is understood.  I

22   would like to hear Mr. McGurk respond just to the

23   objection, please.

24       MR. GOPSTEIN:  Let me be clear on what the objection

1    is.  I'm sorry.  My objection is that all references to

2    the NASD proceeding be barred from this proceeding.

3        ARBITRATOR EDLER:  We understand that to be your

4    objection.

5        MR. MCGURK:  For clarity and so that there is no

6    dispute or no questions to what I'm referring, I would

7    ask the panel to refer to Exhibit 17 in the exhibit

8    binder that has been distributed.

9        MR. GOPSTEIN:  Those are not in evidence.  I object

10    to that.

11        ARBITRATOR GOOD:  We have not received such a book.

12        ARBITRATOR EDLER:  We have not received such a book.

13        MR. MCGURK:  It is in the white box.

14        ARBITRATOR EDLER:  No one has distributed it to us.

15        MR. WALSH:  It will be distributed as the case goes

16    forward, and you will be able to present those

17    accordingly to the panel.

18        ARBITRATOR EDLER:  Mr. McGurk, do you agree with

19    Mr. Gopstein's objection, or do you on general principals

20    of law, do you wish to oppose it?

21        MR. MCGURK:  I do wish to oppose it on two bases.

22    One, Mr. Gopstein has suggested that his client has no

23    way of knowing.  That opens the door --

24        ARBITRATOR EDLER:  Would you limit yourself to -- I

1    apologize if I'm interrupting you improperly.  Try to

2    just deal with the objection that there should be no

3    mention of this proceeding, of the NASD proceeding.

4        MR. MCGURK:  Well, I believe that the circumstances

5    of the enforcement proceeding have been opened by

6    Mr. Gopstein's argument.  When Mr. Gopstein says his

7    client has no way of knowing, how could he say, I don't

8    have to refer to this administrative proceeding, which I

9    agreed to sanctions, including the very account that is

10   at issue here?  The issue of somehow a curtain can be

11   drawn and his client gets to use it both as a sword and a

12   shield, I believe if he does not want to refer to the

13   proceeding, he certainly can't say he doesn't know what

14   this is about.  When he makes that argument, he opens the

15   door.  Therefore, I would suggest that this panel can

16   consider.

17        But let's go a part from that issue in terms of

18   the NASD enforcement proceeding against Mr. Kassar.

19   Let's turn only to the issue of the allegations of the

20   complaint.  There was never a motion filed in this

21   proceeding from -- that began, based on the books of the

22   NASD, on September 30th, 2004.  So when Mr. Gopstein

23   chooses today, September 25, 2006, to raise this, I would

24   suggest he absolutely has waived that argument.  And I