1    agree with Counsel, that this panel certainly should

2    consider the law.  And it is one of the most basic

3    principals that a Court, including this arbitration

4    panel, can conform the pleadings to the proof.

5         And therefore, when Counsel tries to suggest

6    that somehow he doesn't know what this is about, well,

7    first of all, that is just silly.  The documents that he

8    has produced, the documents he faxed to me on

9    Friday the 22nd, including the holding pages for

10   Mr. Peregrin that Mr. Kassar's own documents related to

11   his handling of this account indicate he has known

12   throughout what this is about.

13        So if Counsel wishes to argue the issue of law,

14   both Federal and Civil Procedure is replete with the

15   ability of the Court even after the close of evidence to

16   permit the pleadings to be amended.  Therefore, I would

17   request that this motion be denied.

18       ARBITRATOR EDLER:  Okay.  As I understand it, we

19   have two points to be decided by the arbitration panel.

20   The first is whether there can be any further mention of

21   the NASD proceeding in this room during these hearings

22   and the second is whether the motion -- the basic motion

23   to dismiss Mr. Kassar because he is not mentioned in any

24   of the four counts should be granted.  I think we should

1  adjourn the panel at this point and have an executive

2  session.  At this point we will go off the record.

3  Before we do, though, Mr. Gopstein seems to want to say

4  one further thing.

5      MR. GOPSTEIN:  If you don't mind, if it's okay, I

6  need to respond to a few things that Mr. McGurk just

7  indicated.  Since this is such an important issue, I want

8  to be clear.  If you're going to consider the motion to

9  preclude any mention of the NASD case, I need to talk

10  more about that.  I just mentioned it in passing because

11  he had raised it.  There are additional arguments I would

12  raise to that.

13      ARBITRATOR EDLER:  Let's have -- so that we could be

14  efficient, let's have all of the arguments on both

15  points.  Then the panel can decide both of them.

16      MR. GOPSTEIN:  Let me just take a few points

17  Mr. McGurk mentioned.  He said we waived it.  My

18  predecessor apparently tried to get a more definite

19  statement.  He did it at the very beginning of the case.

20  He said, we don't know what this complaint is all about,

21  we need a more definite statement.  For some reason that

22  motion was denied.

23      It is absolutely incorrect to argue that that

24  was waived.  It was not waived.  It was brought up at the

1    very inception.  He had every right -- Counsel had every

2    opportunity to amend his complaint.  He never did.  The

3    fact remains there is not a claim against my client.

4    This is not a guessing game.  We are not supposed to be

5    here to guess as to what type of relief the claimant is

6    requesting.  It is a violation of NASD rules.  Not only

7    is it a illegally deficient complaint, it's a violation

8    of the NASD rule that I mentioned.

9              Mr. McGurk mentioned a legal principal that is

10   sometimes used in court.  It's called conforming the

11   pleadings to the proof.  That is not to allow a party to

12   invent a brand new cause of action in the middle of a

13   case.  Conforming the pleading to the proof applies to

14   situations where you've alleged a cause of action and

15   you've alleged $200,000 in damages and it turns out the

16   damages are really $250,000.  You make a motion at some

17   point during the case to ask that the pleadings be

18   conformed to the proof, not to invent a brand new cause

19   of action.  That is -- that would be a gross abuse of

20   that principal.  I don't think it has ever been used in

21   the way that Mr. McGurk would ask the panel to use it.

22   That's with respect -- that's all I have to say with

23   respect to the motion to dismiss.

24              Did you want to hear argument on the motion to

1    preclude as well?

2         ARBITRATOR EDLER:  Yes, please.

3         MR. GOPSTEIN:  Well, the NASD -- in some respects

4    they are actually intertwined because Mr. McGurk also

5    makes the argument that, well, since there was this NASD

6    proceeding, we must know what this proceeding is about.

7         That proceeding is an NASD regulatory

8    proceeding.  It has absolutely different parameters,

9    different parties.  There you have the NASD as a

10   regulator looking at certain things that happened at a

11   certain firm involving maybe this client, maybe not,

12   maybe other clients as well.

13        But this is a private cause of action, a

14   private claim brought by a private customer against the

15   broker.  Just because we may or may not have been aware

16   of what was taking place in the NASD proceeding does not

17   automatically mean we know what he is suing us for.  We

18   have absolutely no clue at this point.

19        I will say with respect to that, I am obviously

20   not going to waive the -- I don't want to -- I don't want

21   to put this document into the record.  I will simply say

22   that it was settlement.  And there is a sea of precedent

23   in this country in every court, in every alternative

24   dispute forum that settlements are not to be used as

1    evidence.  And this one specifically even says it.  It

2    says without admitting or denying and solely for the

3    purposes of this proceeding, and any other proceeding

4    brought by or on behalf of the NASD or to which the NASD

5    is a party.  The NASD is not a party to this proceeding.

6    So therefore, this settlement document is absolutely

7    inadmissible in this case

8            And furthermore, you probably know this also.

9    But there are all kinds of reasons why someone would want

10   to settle with the NASD or the SCC.  His livelihood is at

11   stake.  You don't settle with them, you take your

12   chances, and you might be out of business for life.  You

13   do things for certain reasons.  And we won't tell you

14   obviously what the terms of the settlement were.

15           But for all of those reasons, we believe that

16   this document and all proceedings relating to the

17   document, including any complaints, anything having to do

18   with the NASD proceeding should be absolutely

19   inadmissible in this proceeding.  But frankly, I don't

20   even think you get to that issue because I think the case

21   aught to be dismissed.  Thank you.

22       ARBITRATOR EDLER:  Thank you.  Mr. McGurk, would you

23   respond, please.

24       MR. MCGURK:  Yes, your Honor -- Mr. Chairman.  First

1    of all, as to Counsel reading from a document that is not

2    in the record, I would object.  If Counsel wishes to mark

3    that as a pleading, I would withdraw my objection.

4            For Counsel to make representations about what

5    it says and not obviously to share with us what that says

6    I think is inappropriate.

7            Secondly, there are two components that we are

8    discussing.  One is a statement of claim made by the

9    NASD.  That is a public document.  That is not a private

10   document only that can be -- certainly it is obtainable

11   by others.  And so when Counsel says there is no basis

12   for discussing the settlement, how does he get to the

13   complaint?  That the complaint is private too and that we

14   have no right to refer to that?  The other issue is

15   referring to the statement of claim filed on

16   September 30, I'm just going to read --

17       ARBITRATOR EDLER:  You may proceed, Mr. McGurk.

18       MR. MCGURK:  I'm just going to read Paragraph 4 of

19   the statement of claim.  It says, Respondent

20   William E. Kassar, Jr. was representative and branch

21   manager with Milestone at all relevant times.  It goes on

22   to read in Paragraph 14 that Peregrin was assigned to

23   Respondent William E. Kassar, Jr.  Paragraph 15,

24   subsequently Kassar and Milestone induced Peregrin to

1    invest approximately 160,000. 16, after investment,

2    Kassar and Milestone traded the account very actively

3    generating commissions of approximately $13,068 in

4    mark-up or mark-down on securities purchasers sold from

5    or to Milestone's own inventory of $38,651 for total of

6    mark-up and commissions of 51,719.

7         The issue as to what Mr. Kassar did and the

8    misrepresentations, it's in the statement of claim. I

9    would simply state that this panel has full authority as

10   the arbitration panel in this matter to, if it chooses,

11   to permit the pleadings to be amended to conform with the

12   proof. I have nothing further.

13        ARBITRATOR EDLER: Okay.

14        MR. GOPSTEIN: I just misspoke on one important

15   issue. My client reminded me just now that he was not

16   even an employee of Milestone. He was actually an

17   independent contractor, which I believe makes the

18   argument even stronger. He was not Milestone. He was

19   not an employee of Milestone. Every cause of action is

20   against Milestone and only Milestone.

21        ARBITRATOR EDLER: We thank you both. We will now

22   go off the record, and the panel will meet to attempt to

23   decide these issues.

24                    (Discussion off the record.)

1    ARBITRATOR EDLER:  We would like to go back on the

2    record now.  The panel has reached a decision on one of

3    the two issues that have been discussed, the issue of

4    mentioning the NASD regulatory proceeding against

5    Mr. Kassar.  The panel has decided there shall be no

6    further mention of that proceeding and there shall be no

7    evidence of it or any documentary evidence or oral

8    mention of it whatsoever as these proceedings continue.

9        With respect to the second issue, the motion to

10   dismiss the statement of claim against Mr. Kassar, the

11   panel would like to have a little bit of additional

12   argument from Counsel specifically on one aspect of the

13   prior argument, namely, the concept that a statement of

14   claim at this point in the proceeding could be amended or

15   deemed to be amended to conform to proof or proceedings

16   that have occurred up to this point in time.

17       So because it is Mr. Gopstein's motion, would

18   Mr. Gopstein, please, address a little bit further what

19   -- why it would -- why he would be opposed to permitting,

20   in effect, an amendment of the statement of claim at this

21   point in time and why that would be unfair or whatever

22   you want to argue?

23   MR. GOPSTEIN:  Thank you.  As I understand it, the

24   vehicle of conforming pleadings to the proof is used to

1    correct technical deficiencies.  Most often in my

2    experience, most often with respect to the amount of

3    damages, I am unaware of any precedent whatsoever where

4    any Court or arbitration panel literally allowed the

5    claimant or the plaintiff to assert a brand new cause of

6    action for the first time to state a cause of action at

7    trial.

8          What they -- and again, what they do is if you

9    have a claim for negligence, and, for instance, someone

10   is injured in a motor vehicle accident, and you already

11   have a claim for negligence and you alleged damages of X

12   dollars, and it turns out that the damages are more

13   severe, that the rehabilitation has been more extensive,

14   et cetera, et cetera, then you make a motion at the

15   conclusion of your case to conform the pleadings to the

16   proof, to say, in fact, we have greater damages.

17        ARBITRATOR GOOD:  You mean to amend the addendum is

18   what you are saying?

19        MR. GOPSTEIN:  To amend the addendum clause, right.

20   I am unaware of any situation where Courts literally

21   permit brand new causes of action to be asserted for the

22   first time against a particular party.  That I think

23   would be considered undue surprise, unfair surprise,

24   trial by ambush.  There are a whole litany of public

1   policy and legal reasons why the Courts don't permit

2   that.  You can't prepare for something like that.

3         The fact that Mr. Kassar is mentioned several

4   times in the preamble does not at all help us figure out

5   what he is being sued for.  Not only is it not alleged

6   that he breached any duty or committed any wrongdoing in

7   any of the causes of action, there is no damages alleged

8   against him either.  He is not in any of the addendum

9   clauses nor is he in any of the lead-up claims -- the

10  lead-up paragraphs stating what he might or might not

11  have done wrong.

12        And that's what we have been facing in the last

13  -- I mean, I have not been in this case that long.  But

14  for the last month we are guessing what is this about?

15  This is not a guessing game.  Causes of action have been

16  alleged against Milestone and only against Milestone.

17  The vehicle of conforming pleadings to the proof are

18  entirely inappropriate.  If you want to try to use it to

19  create a cause of action that does not exist, that is the

20  only thing he could be using it for at this point is

21  literally for the first time to assert a cause of action

22  that is not anywhere in this proceeding.

23        And so I ask that -- obviously if I -- if you

24  want case law on this, I can provide it.  I don't have it

1    off the top of my head.  It is my experience and probably

2    Mr. McGurk's experience as well that making a motion to

3    conform pleadings to the proof is not designed for this

4    situation.

5          MR. MCGURK:  I vehemently disagree.

6          ARBITRATOR EDLER:  Thank you very much.  Mr. McGurk,

7    will you, please, address this issue.

8          MR. MCGURK:  Yes.  I'm going to read from

9    Paragraph 19.  Because of his lack of knowledge, meaning

10    Mr. Peregrin's lack of knowledge, regarding investment

11    trading, Peregrin relied upon Kassar and Milestone for

12    recommendations.

13          Paragraph 20, accordingly Peregrin relied upon

14    representations of Kassar and Milestone as to securities

15    to purchase and sell.

16          21, Peregrin advised Kassar and Milestone that

17    his investment objective was to make money but with

18    manageable risk.  Kassar represented to Peregrin that

19    stop loss orders would be used.

20          22, at no time did Milestone provide Peregrin

21    with a questionnaire of investment objectives.

22          23, based upon the representations of Kassar

23    and Milestone, Peregrin opened an account at Milestone on

24    approximately June 16, 2003.

1          The specific amount of losses obviously are

2     detailed in Paragraph 16 that I previously read from

3     relating to the commissions that were lost based upon

4     Mr. Kassar's treating activity, the amount of the -- the

5     amount that Mr. Kassar, Paragraph 15, induced

6     Mr. Peregrin to invest was 160,000.

7          The suggestion that somehow there is surprise

8     or unfairness or a lack of awareness is obviously not

9     supported by the reality and by the statement of claim.

10    The suggestion that this is only for conforming the

11    proof, it relates to only damage claims, I vehemently

12    disagree with that position.

13         And lastly, the most fundamental question that

14    this panel has to ask, is Mr. Kassar in any way

15    prejudice?  Does he not know the claims of Mr. Peregrin

16    that I just read to you with his name?  And is he not

17    aware of who it is who made the claim and what it is

18    Mr. Kassar did?  I would read the same paragraphs again

19    that I read to you in the statement of claim.

20         Therefore, I respectfully suggest that this

21    motion to dismiss should be denied.  The panel should

22    grant the claimant leave to amend on its face the

23    statement of claim to include Mr. Kassar in the prayers

24    for relief that are specifically referred to after the

1  activity of Mr. Kassar is identified in the statement of

2  claim.

3      ARBITRATOR GOOD:  You finally hit the issue.  How do

4  you answer about the wherefore clause?

5      MR. MCGURK:  Mr. Kassar was of course a branch

6  manager.

7      ARBITRATOR GOOD:  How do you answer about the

8  wherefore, that his name is not in the wherefore clause?

9      MR. MCGURK:  I ask the panel to refer to the uniform

10  submission agreement.  Look at page -- the first page of

11  that.  His caption in the uniform submission agreement

12  and in the -- and of course in the statement of

13  claim -- in other words, if you refer to the uniform

14  submission agreement, that is the first requirement.  It

15  is who is the person who makes the claim?

16  David Peregrin.  His address.  Who is the respondent?

17  William Kassar.  His address.  His CRD.  What is the

18  amount?  The amount is set forth.  What are the reasons?

19  Those are set forth in the statement of claim.

20      I would suggest -- I could have stopped.  I

21  didn't have to go through the -- this complaint certainly

22  is based upon the format of a complaint in a state or

23  federal court.  You don't need that under the rules of

24  the NASD.  As soon as I tell him what it is he did -- and

1   I can stop certainly after the prior to any of the causes

2   of action.  Great.  He opened the account.  He traded

3   based upon the misrepresentations of Mr. Kassar, and he

4   lost 160,000.  We are ready to go.

5        And for Mr. Gopstein to suggest that somehow

6   the formalities of the Federal Rules of Civil Procedure,

7   which I would submit would permit me to amend those,

8   should take precedence in this I think is inaccurate

9   particularly given the fact that the nature of

10  arbitration is supposed to be straightforward and simple.

11       There certainly are arbitration claims, which I

12  believe the panel would have seen, that are the uniform

13  submission agreement and a letter.

14       Mr. Kassar got me to invest 160,000, and I lost

15  it based on his advice.  Period.  Signed David Peregrin.

16  That's enough.  For Mr. Gopstein to say that I have to

17  meet the formalities of a formal legal pleading I think

18  ignores the reality of arbitration.

19       The other and most important issue is

20  Mr. Kassar can't possibly not know what this complaint is

21  about and who it is who is bringing the claim and what it

22  is he has done.  Just read the paragraphs I read in the

23  record.  On that basis, I would suggest the motion should

24  be denied.

1      ARBITRATOR EDLER:  Thank you very much.  Do either

2  of you other arbitrators have any other questions?

3      MR. GOPSTEIN:  May I respond?

4      ARBITRATOR EDLER:  Yes, you may.

5      MR. GOPSTEIN:  Thank you.  Counsel just stated that

6  the NASD does not require him to do what I'm asking him

7  to do.  In fact, the NASD rule specifically requires it.

8  Rule 10314, as I read earlier, specifically does require

9  the statement of claim to specify relevant facts and the

10 remedies sought.  So Counsel is incorrect on that.

11      Second of all, he is referring -- now he is

12 actually creating a new argument.  He is saying that the

13 statement should be ignored, that you should look at the

14 uniform submission agreement.  The uniform submission

15 agreement doesn't say a thing except that they agree to

16 submit the claim to arbitration.  It does not give you

17 any information whatsoever except that the parties are

18 agreeing to arbitrate.

19      What I think Counsel is referring to is the

20 claim information sheet, which my client does not get.

21 The claim information sheet goes to the NASD only.  Even

22 in the claim information sheet, he does not specify that

23 he is requesting any damages specifically against

24 Mr. Kassar.  It does not matter.  That document does not

1   go to the adversary.  It's just a clerical form that goes

2   to the NASD.

3        The only thing that matters here and that is

4   really important is what is in the statement of claim.

5        Lastly, Mr. McGurk talks about there has been

6   no prejudice.  There has been -- there has been gross

7   prejudice.  Let me just give you a practical example of

8   how a claimant is prejudiced by not having notice of what

9   the claims are against him.  For instance, what if the

10  attorney wants to research?  What are the defenses to a

11  particular cause of action?  There are no causes of

12  action alleged against my client.  What should I be

13  researching; causes of action alleged against Milestone?

14       I don't care about the causes of action he has

15  alleged against Milestone.  I'm only representing Bill

16  Kassar, not Milestone.  What if I wanted to hire an

17  expert?  What would I hire the expert on?

18       The first thing you do when you hire an expert

19  is you give him the pleadings so that he can see what the

20  case is about, what the client is being sued for, and he

21  could begin to give you advice.  What would I consult an

22  expert on?  There is no claim against Mr. Kassar.  You

23  can't just invent it at the hearing.  This is not a mere

24  irregularity.  It's a substantive gaping flaw that I

1   think the panel should basically -- I don't think there

2   is really -- there is really much question.

3        The case should be dismissed against

4   Mr. Kassar.  With all due respect, he has a claim against

5   Milestone.  I don't know what their financial liability

6   is.  Maybe he can collect something there.  Maybe he

7   can't.  That's not really our concern.  For all those

8   legal reasons, the case should be dismissed against

9   Bill Kassar.

10       ARBITRATOR EDLER:  Would you like further argument?

11       MR. MCGURK:  Brief response.  Mr. Gopstein stated

12  earlier that Mr. Kassar left Milestone when they went out

13  of business.  I think that tells the panel everything

14  they need to know.  They don't exist as an entity.  This

15  effort by Mr. Gopstein after immense efforts to prevent

16  this hearing from going forward to now raise this

17  defense, I believe can only be regarded as profoundly

18  unfair.

19       Certainly Mr. Kassar had representation

20  certainly from at least November of 2004, and the issue

21  of failure to adequately name Mr. Kassar was never

22  raised.  So since November of 2004 until

23  September 25, 2006, they have been, if you will, lying in

24  wait.  Well, I think the panel should treat their action

1    with the only fair response here, which is to deny the

2    motion.  Mr. Kassar knows precisely the claims that are

3    being raised against him.  He has had notice.  And his

4    Counsel certainly knows the issues that are being raised.

5    So the issue in terms of unfairness, I think, is make

6    wait at this point.  And the panel should deny.  I have

7    nothing further.  Thank you.

8         ARBITRATOR EDLER:  Thank you both very much.  We

9    will go off the record again, and the panel will meet in

10   executive session.

11                    (Discussion off the record.)

12        ARBITRATOR EDLER:  Back on the record.  The

13   arbitration panel has met and has unanimously decided to

14   grant Respondent Kassar's motion to dismiss the statement

15   of claim against Mr. Kassar without prejudice to bring

16   another action to the extent permitted by applicable law.

17            So at this time having dismissed the action

18   against Mr. Kassar, Mr. Kassar is free to leave the

19   proceeding and, of course, his Counsel as well.  And of

20   course, Mr. Gopstein, you're not here to represent

21   Milestone in any way?

22        MR. GOPSTEIN:  No.  I have not been retained by

23   Milestone.

24        MR. MCGURK:  At this point we would make motion to

1    dismiss Milestone as a party respondent.

2        ARBITRATOR EDLER:  Okay.  The motion to dismiss

3    Milestone as a party respondent is hereby granted by the

4    panel.  I look to each panel member to be sure that I'm

5    not acting beyond the scope of my authority.  And it

6    appears to be unanimous to permit that dismissal of

7    Milestone.

8            Accordingly the proceedings are about to end.

9    I must follow the proper concluding ceremony.  Will each

10   of the parties state affirmatively whether you have had

11   had a full and fair opportunity to be heard?  Mr. McGurk.

12       MR. MCGURK:  The claimant will state that claimants

13   had full and fair opportunity to be heard.

14       ARBITRATOR EDLER:  Mr. Gopstein.

15       MR. GOPSTEIN:  The Respondent Bill Kassar has had a

16   full and fair opportunity to be heard.

17       ARBITRATOR EDLER:  Thank you.  The decision will be

18   forwarded to the parties, although, you've already heard

19   it.  And/or Counsel, as I mentioned at the beginning of

20   the case, I ask that each party or representative

21   complete an evaluation of this arbitration.  Your

22   participation, though strictly voluntarily, greatly

23   assists NASD dispute resolutions ongoing effort to

24   improve the arbitration process.  You can find the

1    evaluation form at HTTP://www.nasd.com/arbevaluation.  If

2    you do not have internet access or have difficulty

3    completing the evaluation on-line, please, ask your case

4    administrator to provide a paper version of the

5    evaluation to be mailed to the address indicated.

6          NASD is not responsible for secure disposal of

7    any documents left by the panel or the parties following

8    a proceeding.  This hearing facility will dispose of all

9    remaining materials in its usual manner.  If a party

10   wishes to retain service, care, and control of the

11   materials, you must take them when leaving.

12          The record will not remain open because the

13   panel has arrived at its decision.  No party will contact

14   any member of this arbitration panel directly.  All

15   communications are to be directed to the staff person

16   assigned to this case.  I request that the parties leave

17   the room at the same time.  And I would just like to add

18   on behalf of the panel that we feel that both Counsels

19   have acquitted themselves very well in making clear,

20   concise, and intelligent arguments to the panel.  And we

21   appreciate that very much.  Thank you kindly.  And have a

22   good day.

23              (Proceedings concluded.)

24

1   STATE OF ILLINOIS   )
                    ) ss:
2   COUNTY OF COOK    )

3        Renee D. Waishwell, C.S.R., Notary Public, being
first duly sworn, deposes and says that she is a
4   Certified Shorthand Reporter, doing business in the City
of Chicago, County of Cook, State of Illinois, and
5   reporting proceedings in the courts in said County;
        That she reported in shorthand and thereafter
6   transcribed the foregoing proceedings;
        That the within and foregoing transcript is
7   true, accurate, and complete, and contains all of the
evidence which was received and all of the proceedings
8   had upon the within case before the Arbitration Panel of
the National Association of Securities Dealers.

9

10

11   Renee D. Waishwell, C.S.R.,
      License No. 084-004451
12

13

14   Subscribed and sworn to
      before me this _22nd_ day
15   Of _November_ 2006 A.D.

16

17   NOTARY PUBLIC

18

19

20

21

22

23

24